### JOHN F. DAHILL *vs.* WILLIAM BOOKER.

Franklin.   Sept. 17. — Nov. 30, 1885.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

If, after the bringing of an action by a mortgagor against a third person for the conversion of the mortgaged property, the mortgagee takes possession of it for breach of the condition of the mortgage, such taking is an application of the property for the benefit of the mortgagor, and should be considered by the jury in mitigation of damages, although the foreclosure was not complete at the time of the trial, and although the mortgagee has sold a portion of the mortgaged property, and has transferred another portion to the defendant.

The making of a second mortgage of personal property, after the bringing of an action by the mortgagor against a third person for the conversion of the same, is not an abandonment of the cause of action.

HOLMES, J.   This was an action of tort in the nature of trover.   The defendant put in evidence to disprove the conversion. It also appeared that one Wheeler, a mortgagee of the goods, took possession of them, nearly a year and a half after this action was begun, for breach of condition, and transferred all but certain articles to the defendant to pay him for storage of the same for the previous year.   Wheeler did not file notice in the town clerk's office of his intention to foreclose until some time afterwards, and within sixty days of the trial, so that the foreclosure was not then complete.   "The defendant asked the court to instruct the jury that the taking of the property by Wheeler for breach of the condition of his mortgage was an application of the property for the benefit of the plaintiff, and should be considered by the jury in mitigation of damages; and that the plaintiff was entitled to damages only for the taking of the property and its detention up to the time it was taken by Wheeler for breach of condition of the mortgage.   The court declined so to rule;" and the defendant excepted.

The instructions requested embodied more or less accurately familiar propositions of law, and, unless the transfer from Wheeler to the defendant took the case out of their operation, they should have been given in substance.   For, apart from that transfer, the property necessarily came back to the plaintiff, or was applied to his use, as the result of Wheeler's taking.   See *Kaley*

v. *Shed*, 10 Met. 317. If the plaintiff redeemed, he regained his possession, which, of course, would go in mitigation of damages, although after action brought. See *Moon* v. *Raphael*, 2 Bing. N. C. 310; *Hanmer* v. *Wilsey*, 17 Wend. 91. On the other hand, if the mortgage was foreclosed, the property went in satisfaction of the plaintiff's debt, and thus was applied to his use by his consent irrevocably given in the mortgage. *Pierce* v. *Benjamin*, 14 Pick. 356, 361. *Squire* v. *Hollenbeck*, 9 Pick. 551. See *Higgins* v. *Whitney*, 24 Wend. 379. It was not suggested that there was any diminution in the value of the property between the times of the conversion and of Wheeler's taking, so that we need not consider whether the second ruling requested would have been quite accurate in form, if that question had arisen. The sum paid to regain possession by redeeming is not to be treated as such a diminution. The liability to pay this sum was independent of the conversion, and was not like a reward paid to recover the goods in consequence of the defendant's conduct, as in *Greenfield Bank* v. *Leavitt*, 17 Pick. 1. See *Cutting* v. *Grand Trunk Railway*, 13 Allen, 381, 388.

The case is not affected by the transfer from Wheeler to the defendant. The plaintiff's possession and right of possession were put an end to by the breach of condition and Wheeler's seizure. Under such circumstances, it is settled that a mortgagor cannot maintain trover for a subsequent sale of all the mortgaged goods together by the mortgagee. Such a sale does not of itself import a repudiation of the mortgage, or determine the title under it. *Landon* v. *Emmons*, 97 Mass. 37. *Wells* v. *Connable*, 138 Mass. 513. See further *Halliday* v. *Holgate*, L. R. 3 Ex. 299; *Donald* v. *Suckling*, L. R. 1 Q. B. 585, 617; *Mulliner* v. *Florence*, 3 Q. B. D. 484. It is true that, in this case, the goods seem to have been separated, and a portion retained by the mortgagee, although the distinction left open in *Landon* v. *Emmons* was not adverted to in argument, and does not appear to have been before the mind of the parties, so that the bill of exceptions is somewhat obscure upon this point. But we do not think that this fact, if it be a fact, without more, can change the result. Such a separation may make the redemption more difficult when the plaintiff desires to redeem, which he does not seem to have done in this case. But we think that it would

be going too far to say that this, in and of itself, necessarily amounted to a repudiation of the mortgage and mortgage title, if indeed it is possible to repudiate a vested legal title in like manner as a simple bailment may be repudiated, it is said, by acts inconsistent with its terms. 2 Roll. Abr. 556, pl. 9. *Commonwealth* v. *James*, 1 Pick. 375, 386.

This is not a case where, the goods being worth more than the mortgage debt, a foreclosure sale purporting to be under the power is made of a portion sufficient to satisfy the debt, and then the residue is returned to the hands of the wrongdoer. Such a case might present different questions from those dealt with here.

The fact that the defendant was reinstated in possession by Wheeler's transfer to him cannot affect the rule of damages. For, even on the extravagant supposition that, for the purpose of preserving his claim against the defendant undiminished, the plaintiff should attempt to insist on redeeming without receiving back possession, the answer would be that, although it is a plaintiff's undoubted right to refuse to receive back converted goods from a defendant, if he prefers full damages, (*Stickney* v. *Allen*, 10 Gray, 352,) yet, if he should attempt to exercise a right under the mortgage, the defendant would be entitled to decline to receive the money except upon the terms of the mortgage, and that it is as much the defendant's right to restore the goods as it is the plaintiff's to receive them, when the mortgage debt is paid. See *Warfield* v. *Fisk*, 136 Mass. 219, 220.

The plaintiff made a second mortgage after the date of the writ. The defendant asked the court to instruct the jury that this was an abandonment of any claim for damages, except for the taking of the property and its detention up to that time; and also that it "was an act inconsistent with the claim of the plaintiff that the property was converted, and should be considered by them on the question of conversion." The court rightly declined to rule as requested. As a previous mortgage would not affect the amount of damages recovered, (*Cram* v. *Bailey*, 10 Gray, 87,) we do not see why a subsequent one should operate as an "abandonment." If the word is to be taken literally, the transaction was *res inter alios*, and could not have had that effect. On the question of conversion, the mortgage, if it tended to

prove anything, tended to prove that the defendant was then in wrongful possession of the goods by its description of them as "now in my saloon . . . . which William Booker occupies without right." But as the owner of chattels does not lose the right to sell or mortgage them by the fact that they are in the wrongful possession of another, (*Hubbard* v. *Bliss,* 12 Allen, 590, and *The Brig Sarah Ann,* 2 Sumner, 206, 211,) his doing so does not tend to prove that they are not in such wrongful possession. Moreover, the evidence was in, and the defendant, whatever he had a right to argue, could not require the judge to single it out for remark. *Littlefield* v. *Huntress,* 106 Mass. 121, 127. *Bugbee* v. *Kendricken,* 132 Mass. 349, 354.

*Exceptions sustained.*

*J. A. Aiken,* for the defendant.
*F. L. Greene,* for the plaintiff.